IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NICHOLAS BRETT GLADDEN,      *

    Plaintiff,             *

v.                      *      Civil Action No. GLR-25-3323

MEDSTAR FRANKLIN SQUARE   *
MEDICAL CENTER, INC., et al.,

                           *

    Defendants.

                          *

                       ***

## <u>**MEMORANDUM OPINION**</u>

THIS MATTER is before the Court on Defendant Medstar Franklin Square Medical Center, Inc.'s (the "Hospital") Motion to Dismiss (ECF No. 14). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motion.

## I.    BACKGROUND[1]

On an unspecified date, self-represented Plaintiff Nicholas Brett Gladden arrived at the Hospital to participate in his child's "emergency" medical care.[2] (1st Am. Compl. ["FAC"] ¶ 15, ECF No. 17). Gladden checked in with the security officer stating he was the child's father. (<u>Id.</u> ¶ 16). The security officer consulted with other staff and returned to tell Gladden that the head nurse would not let him in. (<u>Id.</u> ¶ 17). Gladden explained

---

[1] Unless otherwise noted, the Court takes the following facts from Gladden's First Amended Complaint (ECF No. 17) and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

[2] Gladden first alleges that his daughter needed <u>emergency</u> treatment, but later states that the treatment provided "was <u>not</u> emergent and could have safely awaited [his] input and consent." (1st Am. Compl. ["FAC"] ¶¶ 15, 27, ECF No. 17).

that he had joint custody and that the mother did not have sole authority to direct their child's care. (Id. ¶ 18). He displayed the custody order on his phone, but the officer allegedly refused to look at it. (Id. ¶ 19). Gladden stated that he did not "consent to any treatment without [him] knowing what is going on." (Id. ¶ 20). Staff responded that they were "going with what the mother says." (Id. ¶ 21). After two threats to sue, Gladden was eventually permitted entry. (Id. ¶¶ 24–26). By this time, two hours had passed, and his child's treatment was already completed. (Id. ¶ 26).

Gladden filed the present action on October 6, 2025, against the Hospital, the security officer (John Doe), and the head nurse (Jane Doe) (collectively, "Defendants"). (ECF No. 1). The Hospital filed a Motion to Dismiss on November 12, 2025, (ECF No. 9), to which Gladden filed an Opposition and the Hospital filed a Reply on November 12 and 19, 2025, respectively, (ECF Nos. 11–12). Gladden then filed a Motion for Leave to File a First Amended Complaint ("FAC") on November 19, 2025. (ECF No. 13). The Court granted the Motion and docketed Gladden's FAC on December 8, 2025. (ECF Nos. 16–17).

In the FAC, Gladden alleges: a violation of Section 1557 of the Affordable Care Act ("ACA") against the Hospital (Count I); Medical Battery against all Defendants (Count II); violation of his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment against all Defendants (Counts III and IV); Interference with Parental Rights against all Defendants (Count V); Intentional Infliction of Emotional Distress against all Defendants (Count VI); and Negligent Training and Supervision against the Hospital (Count VII). (See FAC ¶¶ 30–56). Gladden seeks damages, declaratory and injunctive relief, attorneys' fees, and costs. (Id. at 6). The

Hospital filed the instant Motion to Dismiss on December 3, 2024. (ECF No. 14). Gladden filed an Opposition on December 5, 2025, (ECF No. 15), and the Hospital filed a Reply on December 19, 2025, (ECF No. 19).

## II.   DISCUSSION

### A.   <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual

allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Additionally, pleadings drafted by self-represented litigants are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see Spencer v. Earley, 278 F.App'x 254, 259–60 (4th Cir. 2008) ("Dismissal of a pro se complaint . . . for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting Haines v. Kerner, 404 U.S. 519, 521 (1972))). Nonetheless, "liberal construction does not absolve Plaintiff from pleading a plausible claim." Desgraviers v. PF-Frederick, LLC, 501 F.Supp.3d 348, 351 (D.Md. 2020) (quoting Bey v. Shapiro Brown & Alt, LLP, 997 F.Supp.2d 310, 314 (D.Md. 2014)).

**B.   Analysis**

Gladden's FAC presents three federal claims for violations of Section 1557 of the ACA (Count I) and the Due Process and Equal Protection Clauses of the Fourteenth Amendment (Counts III and IV), along with a variety of state law claims (Counts II, V– VII). (FAC ¶¶ 30–56). As discussed below, the Court finds that Gladden's federal

claims are subject to dismissal and declines to exercise supplemental jurisdiction over the remaining state law claims.

### 1.    Count I – Violation of Section 1557 of the ACA

In Count I, Gladden alleges that the Hospital engaged in sex discrimination in violation of Section 1557 of the ACA, 42 U.S.C. § 18116(a), by intentionally crediting the mother's authority without question, treating Gladden as a "lesser or suspicious parent," refusing to view valid custody documents, denying Gladden access and input "solely because he is male," and relying on "assumptions that 'the mother decides.'" (FAC ¶¶ 30–34). The Hospital argues that Gladden fails to state a claim because there is no respondeat superior liability under the ACA and because Gladden does not allege that an official with authority to address the alleged discrimination and institute corrective knowledge had actual notice or knowledge of the alleged misconduct or that the official displayed deliberate indifference to the alleged misconduct. (Def.'s Mem. L. Supp. Mot. Dismiss Pl.'s FAC ["Mot."] at 5–7, ECF No. 14-1). For the reasons below, the Court finds that Gladden fails to state a claim under § 1557 of the ACA.

Section 1557 of the ACA provides that:

> [A]n individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, or section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . . .

42 U.S.C. § 18116(a) (citations omitted). Here, Gladden alleges that the Hospital engaged in sex discrimination in violation of Section 1557. (FAC ¶¶ 30–34). Thus, Title

5

IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, addressing discrimination on the grounds of sex, will be most instructive:[3]

> [T]o succeed on a Section 1557 claim asserting Title IX discrimination upon the basis of sex, a plaintiff must show: (1) the defendant is a health program or activity, any part of which is receiving Federal financial assistance; (2) the plaintiff was . . . subjected to discrimination on the basis of sex; and (3) the plaintiff's claim is enforceable under Title IX.

Am. Ass'n of Physicians for Hum. Rights, Inc. v. Nat'l Insts. of Health, 795 F.Supp.3d 678, 691 (D.Md. 2025) (citing 42 U.S.C. § 18116(a)). Here, neither party disputes that the Hospital is an entity receiving federal assistance and is thus subject to Section 1557's provisions. (FAC ¶¶ 7, 30; see generally Mot. 5–7). The first requirement, therefore, is satisfied.

The second element is at issue. Gladden argues that the staff's repeated deference to the mother—i.e., by stating that they "were going with that the mother says"— suggests that they assumed she was the primary caregiver. (FAC ¶¶ 20–21, 29). Further, Gladden asserts that the staff's treatment of him as a "secondary or suspicious parental figure" demonstrates "sex-based stereotypes prohibited by federal law." (Id. ¶ 29).

By bringing a claim against the Hospital for alleged misconduct by the Hospital's staff, Gladden raises the doctrine of respondeat superior. (See id. ¶ 33). Respondeat superior liability allows a "master" to be "subject to liability for the torts of his servants

---

[3] Title VI of the Civil Rights Act addresses discrimination on the grounds of race, color, or national origin, which is not alleged here. See 42 U.S.C. §§ 2000d, et seq. The Age Discrimination Act of 1975 addresses discrimination on the grounds of age, which is not alleged here. See 42 U.S.C. §§ 6101, et seq. And Section 794 of Title 29 addresses discrimination on the grounds of disability status, which is not alleged here. 29 U.S.C. § 794.

committed while acting in the scope of their employment," Faragher v. City of Boca Raton, 524 U.S. 775, 793 (1998) (quoting Restatement (Second) of Agency § 219(1) (A.L.I. 1958)), and does not require the superior to have actual knowledge of the subordinate's actions for liability to attach, see De Simone v. VSL Pharms., Inc., 36 F.4th 518, 530 (4th Cir. 2022) (finding constructive notice sufficient).

Section 1557 of the ACA does not mention respondeat superior liability, see 42 U.S.C. § 18116(a), and the United States Supreme Court held in Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998), that Title IX does not permit recovery on a theory of respondeat superior liability or constructive notice. Id. at 285. Specifically, the Court held that an institution may not be liable under Title IX unless an "official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination . . . and fails adequately to respond . . . . [M]oreover, . . . the response must amount to deliberate indifference to discrimination." Id. at 290 (emphasis added).

In Dallas v. Sheidy, No. MJM-24-952, 2025 WL 958565 (D.Md. Mar. 31, 2025), this Court reaffirmed Gebser and applied it in a healthcare setting. Similar to the Hospital in the present case, the Dallas defendants argued that the complaint did not allege that the defendants failed to respond adequately after receiving actual notice of discriminatory conduct by its employees. Id. at *5. The Court held that even assuming there was discriminatory conduct on the basis of sex, and the official had the authority to address the alleged discrimination, the complaint's lack of allegations that the official failed to respond adequately or displayed deliberate indifference to the plaintiff's complaint made the claim subject to dismissal. Id. at *5–6.

Here, while the security officer stated that the head nurse would not let Gladden into the treatment room, (FAC ¶ 17), Gladden does not allege that the head nurse had the authority to address the alleged discrimination or institute corrective measures, (Mot. at 7; Def.'s Reply Mem. Supp. Mot. Dismiss FAC ["Reply"] at 5, ECF No. 19). While the FAC states that the head nurse "exercised decision-making authority over parental access and consent," (FAC ¶ 8), this allegation merely describes the head nurse's authority with respect to the operational aspects of the emergency room, not the authority to address the alleged discrimination and institute corrective measures, as required by Gebser, (Reply at 5).

Even if the head nurse did have the requisite authority, Gladden does not allege a failure to act or deliberate indifference. (Mot. at 7; Reply at 5–6). Gladden states that, although it took two hours, he was permitted to see his child. (FAC ¶¶ 24–26). Therefore, someone—the head nurse, the security officer, or other Hospital staff member—took action by permitting him to enter. Further, the alleged two-hour delay does not amount to deliberate indifference. See, e.g., Koon v. North Carolina, 50 F.4th 398, 410 (4th Cir. 2022) (finding no deliberate indifference under Gebser despite defendant taking seven months to take action). Multiple circuits have even held that a delay in receiving medical treatment is not actionable deliberate indifference, unless it causes substantial harm. See Garcia v. Fed. Bureau of Prisons, 459 F.App'x 458, 459 (5th Cir. 2012); Santiago v. Ringle, 734 F.3d 585, 592 (6th Cir. 2013); Knight v. Wiseman, 590 F.3d 458, 466 (7th Cir. 2009) (finding that a two-and-a-half hour delay in receiving treatment was "minimal" and caused "no adverse consequences"). Here, Gladden was not even the person receiving medical treatment, it was his daughter. (FAC

¶ 1). And he does not allege that he experienced any harm from the delay. (See id. ¶¶ 14–29, 50–52). Therefore, Gladden does not assert sufficient facts to allege a failure to act or deliberate indifference by the Hospital.

Even if the head nurse (1) had the requisite authority, and (2) displayed inaction and deliberate indifference such that Gebser is satisfied, Gladden's claim still would not satisfy the second requirement delineated in American Association of Physicians that the plaintiff was subjected to discrimination on the basis of sex. 795 F.Supp.3d at 691. To satisfy this requirement, Gladden must show that sex was the "but-for" cause of the challenged action. Doe v. Bd. of Regents of the Univ. Sys. of Md., No. ADC-23-3100, 2024 WL 1657339, at *4 (D.Md. Apr. 17, 2024) (quoting Pappas v. James Madison Univ., No. 5:22-cv-00028, 2023 WL 2768425, at *11 (W.D.Va. Mar. 31, 2023). Gladden alleges that he was denied access and voice "solely because he is male." (FAC ¶ 33d). This statement, however, is conclusory, and the inference is quite attenuated. (Mot. at 7; Reply at 6). While the Court must accept the factual allegations in the complaint as true, that same deference is not given to conclusory factual allegations. See Albright, 510 U.S. at 268; United Black Firefighters, 604 F.2d at 847. The Hospital may have honored the mother's wishes because she arrived with the child, because Gladden instructed staff not to treat his child, or because immediate treatment was medically necessary and appropriate. (Reply at 6–7). Thus, the FAC does not allege facts that show that sex was the but-for cause of the Hospital's action.

In sum, because (1) Section 1557 of the ACA does not allow for respondeat superior liability, see 42 U.S.C. § 18116(a); (2) Gladden fails to allege facts that show that an official with the authority to address the discrimination had actual knowledge

9

and failed to act, as required by <u>Gebser</u>, 524 U.S. at 290; and (3) Gladden only offers conclusory statements that sex was the but-for cause of the Hospital's actions, this Court will dismiss Count I for failure to state a claim.

### 2.    Counts III and IV – Constitutional Violations

In Counts III and IV, Gladden brings claims under 42 U.S.C. § 1983 for violations of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment, respectively. (FAC ¶¶ 42–46). In Count III, he alleges that Defendants deprived him of his substantive due process right to direct the medical care of his child by excluding him and proceeding without his consent. (<u>Id.</u> ¶¶ 42–44). In Count IV, he alleges that Defendants engaged in sex discrimination in violation of the Equal Protection Clause by treating him differently than the child's mother "solely because of his sex." (<u>Id.</u> ¶¶ 45–46). The Hospital contends that it is a private party, not a state actor, and thus is not liable under Section 1983. (<u>Id.</u> at 7–10). The Court agrees and will dismiss Counts III and IV.

Section 1983 allows a person who acts under the color of law to be liable to individuals whose constitutional and legal rights and privileges they have deprived. <u>See</u> 42 U.S.C. § 1983. Sustaining an action under Section 1983 requires the satisfaction of two elements: (1) a "violation of a right secured by the Constitution and laws of the United States"; (2) by a person acting under color of law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). "To implicate 42 U.S.C. § 1983, . . . [t]he person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." <u>DeBauche v. Trani</u>, 191 F.3d 499, 506 (4th Cir. 1999).

10

Neither party disputes that the Hospital is a private entity. (See Mot. at 12 (stating that Hospital is a private hospital); see generally FAC). As the Hospital points out, this Court repeatedly has held that private hospitals and employees of private hospitals do not act under the color of state law for purposes of § 1983 claims. (Mot. at 11); see, e.g., Green v. Cascella, No. SAG-23-1819, 2023 WL 4896788 at *2 (D.Md. Aug. 1, 2023) (finding that defendant hospital employees did not act under the color of state law when they provided medical care to plaintiff); Crussiah v. Attia, No. PX-15-2516, 2016 WL 3997315, at *5 (D.Md. July 26, 2016) (holding that neither hospital being subject to federal regulation nor being recipient of Medicare and Medicaid funds make hospital a state actor subject to suit under § 1983); Hargett v. Johns Hopkins Hosp., No. JFM-17-1119, 2017 WL 7596908, at *1 (D.Md. May 31, 2017) (deciding that the hospital and its employees did not act under the color of state law and were not subject to suit under § 1983), aff'd, 699 F.App'x 219 (4th Cir. 2017). The United States Court of Appeals for the Fourth Circuit also has held that hospital employees are not state actors for the purposes of § 1983 claims. See S.P. v. City of Takoma Park, 134 F.3d 260, 268–69 (4th Cir. 1998).

That is not to say a private actor may never be held accountable under Section 1983. In Andrews v. Federal Home Loan Bank of Atlanta, 998 F.2d 214 (4th Cir. 1993), the Fourth Circuit recognized four contexts in which a private party can be deemed a state actor:

> (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an

> unconstitutional act in the course of enforcing a right of a private citizen.

Id. at 217. The Fourth Circuit wrote that if private conduct does not fall into one of these four categories, then the conduct is not the action of the state. Id. And Section 1983 does not apply to private conduct, "no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)).

As to the third category, where the private entity performs a traditional and exclusively public function, the Supreme Court has emphasized that "[i]t is not enough that the federal, state, or local government exercised the function in the past, or still does[, or] . . . that the function serves the public good or the public interest in some way." Manhattan Cmty. Access Corp. v. Halleck, 587 U.S. 802, 809 (2019). Rather, "the government must have traditionally and exclusively performed the function." Id. Very few functions fall into this category. Id. (quoting Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158 (1978)).

Here, the Parties argue about whether the Hospital performed a public function such that it can be held liable under § 1983 despite being a private entity. Gladden asserts in his Opposition that the Hospital interpreted and enforced a judicial custody order, which is a function characteristic of courts, police, and child-welfare authorities, not private hospitals. (Def.'s Resp. Opp'n ["Opp'n"] at 4, ECF No. 15). The Hospital counters that there are no facts to support the allegation that the Hospital adjudicated custodial access, as indicated by Gladden's allegation in the FAC that the security officer "refused to look at [the custody order]." (Mot. at 11; Reply at 9; see FAC ¶ 19). To be sure, Gladden cannot argue both that the security officer refused to view the

custody order and that the security officer or Hospital interpreted and enforced it, as those are entirely contradictory. (FAC ¶¶ 9, 19). As discussed above, there could have been other reasons why Hospital staff excluded Gladden from the examination room that are independent of the custody order—i.e., because Gladden came in separately from the child and instructed staff not to treat the child. (Reply at 6–7).

Gladden also argues in his Opposition that the Hospital "threatened removal using police-like authority," (Opp'n at 4), but the FAC contains no such allegations, (see generally FAC). Generally, parties are not permitted to amend their complaint in this manner, and the Court need not consider this allegation. See Gough v. Bankers Life & Cas. Co., No. PJM-17-2341, 2019 WL 585715 at *3 (D.Md. Feb. 12, 2019).

Even if the Court were to consider this allegation due to Gladden's self-represented status, however, Gladden still has not satisfied the state actor prong of § 1983. Id. (stating that "in certain circumstances, courts may consider new facts and claims introduced by a pro se plaintiff in filings apart from her complaint"). "Although private security guards may have a closer nexus to state action" than hospitals and clinicians, "a plaintiff must still allege that the individual guard 'was acting as an instrument of the state.'" McKiver v. Ireland, No. 7:23-cv-00548, 2024 WL 677707, at *5 (W.D.Va. Feb. 20, 2024) (quoting Rose v. Cent. Health, Inc. No. 6:17-cv-00012, 2017 WL 3392494, at *13 (W.D.Va. Aug. 7, 2017)). To determine whether a private individual is acting as a government agent, the Fourth Circuit instructs courts to consider: "(1) whether the Government knew of and acquiesced in the private individual's challenged conduct; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation." United States v.

<u>Day</u>, 591 F.3d 679, 683 (4th Cir. 2010) (citation modified) (quoting <u>United States v. Jarrett</u>, 338 F.3d 339, 344 (4th Cir. 2003)). Gladden has not alleged facts that the Government knew of the conduct of the Hospital's security or that the security officer intended to assist law enforcement. In fact, Gladden's allegation that the security officer went to the back area, spoke to staff, and <u>then</u> excluded Gladden indicates that the security guard, if anything, was acting as an agent of hospital leadership. (FAC ¶ 17). But, once again, hospital employees are not state actors for the purposes of § 1983 claims. <u>See</u> <u>S.P.</u>, 134 F.3d at 268–69.

In sum, the Hospital and its employees are not state actors, do not have a sufficiently close relationship with state actors to be engaged in the state's actions, and do not exercise a traditional and exclusive state function by restricting access to treatment rooms. Therefore, this Court finds that the Defendants cannot be liable under Section 1983. <u>DeBauche</u>, 191 F.3d at 506; <u>Andrews</u>, 998 F.2d at 217. Because both Counts III and IV are brought under Section 1983, (FAC ¶¶ 42–46), this Court will dismiss both for failure to state a claim.

### 3.    Counts II, V–VII – State Law Claims

The remaining counts (Counts II, V–VII) present state law claims. (<u>Id.</u> ¶¶ 35–41, 47–56). The Hospital asserts that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. (Mot. at 12).[4] Gladden counters that

---

[4] Alternatively, the Hospital argues that Gladden fails to state a claim for the state-law claims because he does not plead all the required elements of those claims. (Def.'s Mem. L. Supp. Mot. Dismiss Pl.'s First Am. Compl. ["Mot."] at 13–18, ECF No. 14-1). As stated below, however, the Court declines to exercise supplemental jurisdiction over these claims and, therefore, need not engage with this alternative basis for dismissal.

the Court should exercise supplemental jurisdiction over Counts II and V–VII because they arise from the same nucleus of operative fact and because hearing all the claims together promotes judicial efficiency. (Opp'n at 5). The Court agrees with the Hospital.

A district court "may decline to exercise supplemental jurisdiction" over state law claims if, inter alia, the court "has dismissed all claims over which it has original jurisdiction," or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). The Supreme Court has instructed district courts to "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." Id. (footnote omitted); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

In weighing the Carnegie-Mellon factors, this Court declines to exercise supplemental jurisdiction over Gladden's pending state law claims. Medical battery, interference with parental rights, intentional infliction of emotional distress, and negligent training and supervision are all governed by Maryland law and common law. Thus, given Maryland's strong interest in adjudicating disputes under its own laws, this

Court finds that a Maryland state court will be better positioned to consider the merits of Gladden's remaining claims.

## III.   CONCLUSION

For the foregoing reasons, the Court will grant the Hospital's Motion to Dismiss (ECF No. 14) and will dismiss Gladden's First Amended Complaint (ECF No. 17) without prejudice. A separate order follows.

Entered this 9th day of July, 2026.

                                      <u>         /s/          </u>
George L. Russell, III
Chief United States District Judge

16